UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| DANNY EDWARD SIMPSON, ) ) Plaintiff, ) ) v. ) ) NANCY A. BERRYHILL., Deputy ) Commissioner of Operations of ) the Social Security ) Administration, ) ) Defendant. ) | Civil Case No. 6:17-cv-207-JMH **MEMORANDUM OPINION & ORDER** |

\*\*\*

Plaintiff Danny Edward Simpson ("Simpson") brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision as it is supported by substantial evidence.

I.

In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a

listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs*., 14 F.3d 1107, 1110 (6th Cir. 1994).

II.

Plaintiff filed his applications for benefits, alleging disability beginning in June 2013. (Tr.(Tr. 18, 223-37, 259). The claim was denied initially and upon reconsideration. After a hearing, Administrative Law Judge ("ALJ") Peter Jung denied Plaintiff's claims on December 16, 2015. (15-30) . The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review of the ALJ's ruling. [TR 1-7]. This appeal followed pursuant to 42 U.S.C. § 405(g). Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are ripe for review. (DE 13, 15).

Plaintiff completed the first-half of the twelfth grade and later earned a General Equivalency Diploma (GED) (Tr. 78). He worked in coal mines for 13 years and then attended vocational training in automotive technology (Tr. 78-79, 264, 281). He

indicated, however, that following his coal mining work, he could not bend over a car long enough to work on it (Tr. 79). Plaintiff thus worked in contract labor and as an electrician for a few years, and then was a maintenance mechanic for the public housing authority for 12 years until he stopped working in mid-2013 (Tr. 264, 281). As a maintenance mechanic, Plaintiff was responsible for up to 100 housing units at a time and was on call 24-7, five days per week (Tr. 79-80, 83, 285). job required that he do a large variety of tasks, including picking up trash, moving furniture, yard work, painting, and working on water heaters, gas furnace heaters, stoves, and refrigerators (Tr.79-80, 285). Plaintiff indicated that he left his maintenance mechanic job because "my nerves and my body just couldn't take it" any longer (Tr. 83).

## MEDICAL EVIDENCE

The treatment notes of record reflected that, once every few months, Plaintiff saw care providers at Pine Mountain Clinic (PMC)2 for medication refills, maintenance, and general medical needs (see Tr. 365-520). PMC care providers monitored and prescribed medications for Plaintiff's chronic conditions, which included hypertension, hyperlipidemia, allergies, and backache (see Tr. 365). Plaintiff also complained of joint pain, especially in his hands, but a rheumatoid workup was negative (see Tr. 343-47, 382). When Plaintiff complained of increased low back pain in mid-2013,

care providers ordered lumbar imaging (see Tr. 351-52, 354, 411-13). A lumbar MRI showed significant degenerative changes at the L4-L5 vertebrae level, with a bulging disc and stenosis (Tr. 352). Except for an aggravation of back pain in mid-2013 (see Tr. 410, 413), the record indicated PMC care providers assessed Plaintiff's back pain as controlled with medications throughout the entire relevant time period (Tr. 365, 369, 372, 376, 380, 384, 388, 392, 395, 398, 404, 407).

In November 2014, Plaintiff saw Aaron Fain, M.D., for a consultative physical examination in connection with his disability claims (see Tr. 357-61). Plaintiff's main complaint was his low back, which he said had been hurting since the late 1990s as a result of working in coal mines (Tr. 358). Dr. Fain noted that Plaintiff did not use any assistive devices such as a cane, walker, wheelchair, or brace (Tr. 359). On examination, Dr. Fain found that Plaintiff was able to toe walk, heel walk, squat, and get on and off the examination table without difficulty or assistance (Tr. 360). Plaintiff had decreased grip strength but full leg and arm strength, full range of motion, normal reflexes, and intact sensation (Tr. 360). Dr. Fain found that Plaintiff had moderate degenerative changes in his low back, likely from prolonged heavy labor (Tr. 361).

State agency physician Marcus Whitman, M.D., reviewed the record in December 2014 and opined that Plaintiff retained the

ability to perform a range of light exertional work (Tr. 97-103). In February 2012, state agency physician P. Saranga, M.D., reviewed the record and also opined that Plaintiff could perform a range of light work (Tr. 126-30).

Plaintiff and his attorney appeared at a March 2016 administrative hearing where an ALJ heard testimony from Plaintiff and a vocational expert (Tr. 72-93). Plaintiff testified that no one could read his handwriting because he had arthritis in his hands and could not hold on to anything (Tr. 78, 82). He said he could not work due to pain in his hands and back, and bursitis in his shoulders (Tr. 81-82). When he was asked if he thought he could perform work that would allow him to sit and stand at will, such as an inspector job, Plaintiff indicated he did not know if he had the attention span for it (Tr. 87).

After the hearing, the ALJ issued a March 2016 decision that followed the regulatory five-step sequential evaluation described above in determining that Plaintiff was not disabled (see Tr. 18-26). See 20 C.F.R. § 404.1520(a)(4). The ALJ found that, although Plaintiff had severe impairments including degenerative disc disease of the lumbar spine, obesity, hypertension, hyperlipidemia, and osteoarthritis of the hands, his condition did not meet or medically equal the criteria of any per se disabling impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1 (the Listings) (Tr. 20-21). The ALJ next found that, notwithstanding

his impairments, Plaintiff retained the residual functional capacity (RFC)3 for a limited range of light exertional testimony in finding that Plaintiff could perform other work existing in the national economy and was thus not disabled within work (Tr. 21-24). The ALJ then relied on vocational expert the meaning of the Act (Tr. 24-26).

Plaintiff first argues that the ALJ acted "[c]ontrary to the clear requirements of [Social Security Ruling] 16-3p" because he "did not consider" an agency employee's observations of Plaintiff during an interview (*see* Doc. 13, Pl. Br. 4). The record refutes Plaintiff's argument. Not only did the ALJ state that he considered all the evidence of record (Tr. 21), but he also included the agency employee's report as Exhibit 1E in the list of exhibits he considered. Plaintiff's argument is further undermined by the distinction between the ALJ's duty to consider evidence and the ALJ's duty to discuss evidence. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) (unpublished). Consistent with T*hacker*, the Court shall find that the ALJ's lack of a discussion of the agency employee's observations does not support a conclusion that they were not considered. Furthermore, the agency employee's observations (Tr. 260) are directly contradicted by Dr. Fain's report (Tr. 360).

Plaintiff next argues that the ALJ erred in considering his prescription medications and their side effects (see Pl. Br. 5-

6). Plaintiff does not challenge any of the other evidentiary inconsistencies highlighted by the ALJ. For example, the ALJ accurately observed that Plaintiff's care providers described his conditions as controlled in the most recent treatment note of record in 2015 (Tr. 23). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (in evaluating a claimant's allegations, an ALJ may consider the effectiveness of the claimant's medications). The ALJ also Plaintiff's allegations were undermined by their inconsistency with the consultative examiner's findings; Plaintiff's own daily activities; the objective medical evidence of record; and the lack of any opinions indicating Plaintiff was so functionally limited that he was disabled (see Tr. 22-23). See 20 C.F.R. § 404.1529(c)(2), (c)(3)(i), (c)(3)(vii) (in considering a claimant's allegations, ALJ may consider the objective medical evidence, statements from medical and other sources, evidence of the claimant's daily activities, and other factors concerning the claimant's functional limitations).

These inconsistencies alone are substantial evidence in support of the ALJ's finding that Plaintiff's allegations were not entirely reliable.

Regardless, Plaintiff's care providers did not recommend Surgical intervention—rather, they treated Plaintiff with only medications. The ALJ reasonably found that medications were a

conservative course of treatment. *See* 20 C.F.R. § 404.1529(c)(3)(v) (in evaluating a claimant's allegations, an ALJ may consider the type of treatment received). Moreover, the ALJ was reasonable in noting that Plaintiff's medications were not strong chronic narcotics or opiates, and Regardless, Plaintiff's care providers did not recommend surgical intervention—rather, they treated Plaintiff with only medications. The ALJ reasonably found that medications were a conservative course of treatment. See 20 C.F.R. § 404.1529(c)(3)(v) (in evaluating a claimant's allegations, an ALJ may consider the type of treatment received). Moreover, the ALJ was reasonable in noting that Plaintiff's medications were not strong chronic narcotics or opiates, and were moderately dosed (see Tr. 23). For example, while care providers prescribed Plaintiff one tablet of Norco twice a day, the usual dose ranges as high as eight tablets per day (one to two tablets every four hours up to a total of eight tablets). See Harold M. Silverman, Pharm. D., "The Pill Book: The Illustrated Guide to the Most-Prescribed Drugs in the U.S." 832 (15th Rev. Ed.) (2012). While Plaintiff was prescribed 5 mg of Valium once a day, the usual dose ranges from 2 mg to 40 mg per day. Id. at 162. While Plaintiff was prescribed 300 mg of neurotin (Gabapentin) once per day, the usual dose is 300 to 600 mg three times per day. Id. at 1144. A reasonable person could agree with the ALJ's finding that Plaintiff's medications weremoderately dosed.

In arguing that the ALJ erred with respect to considering the side effects of his medications, Plaintiff relies almost exclusively on the Mayo Clinic's descriptions of "common side effects" (see Pl. Br. 6). The question before the ALJ was not what side effects are commonly associated with a medication—rather, the question was what side effects was Plaintiff, in fact, experiencing. Notably, Plaintiff reported that at least seven of his medications caused no side effects (see Tr. 296). Plaintiff indicated that only one of his medications (gabapentin) caused drowsiness (see Tr. 296).4 However, the record evidence showed that Plaintiff took this medication at bedtime (see, e.g., Tr. 362, 369). As such, it is unclear how this reported side effect was detrimental to Plaintiff, let alone has Plaintiff explained why this should have changed the RFC assessment.

Plaintiff's third and final argument is that the AlJ erred in considering whether his condition satisfied the criteria of Listing 1.02A (major dysfunction of a joint) (see Pl. Br. 6-8). Again this argument is refuted by the record.

A claimant may be found disabled under Listing 1.02A if, among other things, he has an "inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.02A. The Listings define the inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to

independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1,

§ 1.00(B)(2)(b)(1). The Listings explain that

[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school.

*Id.* at § 1.00(B)(2)(b)(1). reasonable pace on rough or uneven surfaces; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. pt. 404, subpt. P, app. 1, Listings 1.02A, 00(B)(2)(b)(2).

Here, the record evidence did not show Plaintiff had "an extreme limitation in the ability to walk." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1). Dr. Fain observed that Plaintiff could walk, squat, and get on and off the examination table without difficulty or assistance (Tr. 359-60). Plaintiff reported to Dr. Fain that he was able to cook, clean, drive, and shop without causing significant amounts of pain (Tr. 359). And in January 2015, Plaintiff reported to his PMC care providers that he was exercising by walking eight hours weekly per week (Tr. 363). By his own admission, Plaintiff did not have an extreme limitation in his ability to walk. *See Sullivan v. Zebley*, 493 U.S. 521, 530

(1990). The ALJ reasonably found that the record evidence did not demonstrate that Plaintiff had an inability to ambulate effectively within the meaning of the Listings.

The Court having found no legal error on the part of the ALJ and that the decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [DE 13] be, and the same hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment (DE 15)be and the same hereby is, **GRANTED**.

A separate judgment in conformity herewith shall this date be entered.

This the 27th day of September 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge